PAUL M. BERGER et al., Respondents, v. GEORGE E. VARREL-
MANN, Impleaded, etc., Appellant.

| | |
|---|---|
| 127 | 281 |
| 129 | 7 |
| 127 | 281 |
| 130 | 429 |
| 127 | 281 |
| 138 | 442 |
| 127 | 281 |
| 146 | 44 |
| 127 | 281 |
| 149 | 58 |
| L149 | 124 |
| 127 | 281 |
| 163 | 48 |
| 163 | 49 |
| e163 | 50 |

Although a finding of fact is called a conclusion of law and improperly
classified as such in a decision of the court or report of a referee, it will,
for the purpose of upholding the judgment, be given the same effect as
if it were embraced within and designated as one of the findings of fact.

The provision of the act of 1887 (§ 30, chap. 503, Laws of 1887), limiting
the amount of preferences in an assignment for the benefit of creditors
and invalidating preferences in excess of the limit, is not confined to
preferences in the assignment itself, but applies to those created by a
separate instrument in contemplation of the assignment; it includes all
instrumentalities which the insolvent debtor, in contemplation of a
general assignment, voluntarily employs to give a preference, and *it
seems* the want of knowledge on the part of a creditor so preferred
that an assignment was contemplated, will not avail to validate the
preference. (BRADLEY, HAIGHT and BROWN, JJ., dissenting.)

The firm of W. & H. E. confessed judgment in favor of defendant V. On
the same day an execution was issued thereon and levied, and imme-
diately thereafter the judgment debtors made a general assignment for
the benefit of creditors. The property levied upon was sold under the
execution. In an action brought by other judgment creditors to set
aside said judgment and execution and to recover for the benefit of the
estate the amount realized on the sale, on the ground that the assignors,
in contemplation of their general assignment and as part thereof, created
by said judgment a preference for more than one-third of their assets,
the trial court found that the assignors' estate was not worth three times
the amount of the judgment confessed; that when it was confessed and
the assignment executed, the assignors and V. knew that the sale under
the execution would absorb more than one-third of the assets and that
this was the result of the sale; that the judgment was confessed and the
execution and levy made by the assignors and V. in contemplation of
their general assignment and for the purpose of preferring V. for more
than one-third of the net assets; that said confession, execution and
levy were made in fraud of said general assignment. *Held* (BRADLEY,
HAIGHT and BROWN, JJ., dissenting), that the preference created by the
judgment confessed in favor of V. came within the prohibition of the
statute; and that plaintiffs were entitled to the relief sought.

*Lake Shore Banking Co.* v. *Fuller* (110 Penn. St. 156), questioned.

(Argued March 6, 1891; decided June 9, 1891.)

APPEAL from judgment of the General Term of the Supreme
Court in the first judicial department, entered upon an order

made the first Monday of October, 1890, which affirmed a judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term.

From June, 1888, to April 29, 1889, Henry Erdtmann and Gustave Varrelmann were partners engaged in business at Nos. 252 and 254 Pearl street, New York, under the firm name of " W. & H. Erdtmann." April 29, 1889, they confessed judgment in favor of George E. Varrelmann (the father of Gustave Varrelmann) for $7,824.62, which was entered and docketed in the office of the clerk of the city and county of New York, at twenty-six minutes past twelve o'clock of that day, and on the same afternoon an execution thereon was delivered to the sheriff of that county, who on the same day " levied under such execution upon the entire stock and property of said defendants, Henry Erdtmann and Gustave Varrelmann, in their several places of business, 252 and 254 Pearl street, and at the warehouse of W. A. Evis & Co., 63 Front street, in the city of New York." Immediately after the levy of the execution, and on the same day, the defendants therein executed and delivered a general assignment for the benefit of creditors, to Clemens J. Kracht, by which their individual property was devoted to the payment of their personal debts, and the surplus, if any, together with the firm property, to the payment of its debts, and the surplus of the firm assets, if any, to the payment of their personal debts (if their individual assets were insufficient for that purpose), according to the interest of each partner. None of their individual creditors were preferred except employes, whose wages were to be first paid. The salaries and wages of the firm employes were directed to be first paid, after which the firm creditors were divided into six classes, which were to be paid in full in their order. April 30 and May 1, 1889, were legal holidays, and the assignment was not recorded until May 2, 1889, at five minutes past nine in the forenoon. At the time judgment was confessed and the assignment executed an action was pending in the Supreme Court, brought by the plaintiffs herein against the assignors for the recovery of the amount due on their promissory note

for $1,000, which fell due April 4, 1889, in which action a judgment was duly entered and docketed at ten o'clock and ten minutes in the forenoon of May 2, 1889, and ten minutes thereafter an execution thereon was duly issued and delivered to said sheriff. May 9, 1889, the sheriff sold, under Varrelmann's execution, all of the property upon which he had levied for $5,877.79, nearly all of which was purchased by the plaintiff in the execution. On the 9th of May, 1889, this action was begun to set aside the judgment so confessed, the execution issued thereon, and for the recovery for the benefit of the assignee, from the defendant, George E. Varrelman, the amount realized upon the sale under the execution, on the ground that the assignors, in contemplation of their general assignment, and as a part thereof, in violation of section 30 of the General Assignment Act, as amended in 1887, created a preference for more than one-third of the assets of the assignors. The assignee refused to bring the action in his own behalf and was made a party defendant.

The judgment recovered, and which is appealed from, set aside the judgment confessed, the execution issued thereon, the levy and sale made thereunder, and adjudged that George E. Varrelmann pay $5,877.79 (the sum collected on the execution) to the assignee, to be by him distributed according to the terms of the general assignment.

Further facts are stated in the opinion.

*Rudolph Dulon* for appellant. No facts other than those contained in the findings of fact are presented for the consideration of the appellate court. (Code Civ. Pro. § 992 ; *Porter* v. *Smith*, 107 N. Y. 531.) The statute is not intended to regulate the act of the creditor. He may, notwithstanding the statute, if he does not know that his debtor contemplates making an assignment, take a mortgage, power of attorney to confess judgments, or other security for his debts, in good faith, and enforce the same. And if he procure the preference over the assignment by his own diligence, and without collusion with the debtor, the subsequent assignment will not affect

his security. The law gives the creditor the advantage he may secure by his superior diligence, where he is guilty of no fraud, or of unlawful confederation or collusion to evade the provisions of the statute. (*H. N. Bank* v. *Sanchez*, 131 Ill. 330 ; Laws of 1877, chap. 466 ; Laws of 1887, chap. 503 ; Sutherland on Stat. Const. 523 ; Freeman on Judgments, § 548; Code Civ. Pro. § 1273 ; *Gwynne* v. *Burnell*, 7 C. & F. 572 ; *Jones* v. *Smart*, 1 T. R. 44.) The appellant is protected by the statute which authorized him to obtain a judgment by confession. (*Frier* v. *Herman*, 115 N. Y. 163 ; 1 Black on Judg. § 293.)

*Frederic W. Hinrichs* for respondents. This suit is brought in aid of the assignment, and the facts offer abundant ground for setting aside the judgment and for having the assets which were levied upon by the defendant George E. Varrelmann (or their proceeds) paid to the defendant Kracht for distribution under the terms of the assignment deed. (*Spellman* v. *Freedman*, 54 Hun, 409 ; *Wilcox* v. *Payne*, 8 N. Y. Supp. 407 ; *White* v. *Cotzhausen*, 129 U. S. 329.) Plaintiffs are both judgment creditors for $1,030.77 and simple contract creditors for $22,000. But without a judgment the action would lie, as it is in aid of the assignment, and not a creditor's suit brought for the especial advantage of the plaintiffs. (*Dewey* v. *Moyer*, 72 N. Y. 78; U. S. R. S. § 5106 ; *Bate* v. *Graham*, 11 N. Y. 237 ; *Hagan* v. *Walker*, 14 How. [U. S.] 29 ; *Crouse* v. *Frothington*, 97 N. Y. 105 ; *Preston* v. *Spaulding*, 120 Ill. 208 ; *White* v. *Cotzhausen*, 129 U. S. 329; *Spring* v. *Short*, 92 N. Y. 546 ; *Sands* v. *Codwise*, 2 Johns. 486.) The judgment confessed in favor of the appellant and the execution and levy which followed were made by the defendants Henry Erdtmann and Gustave Varrelmann, in contemplation of their general assignment, and for the purpose of preferring appellant for more than one-third of their assets, to evade the statute preventing unlimited preferences in assignments, and to prevent the assets from being distributed by their assignee pursuant to the terms of the assignment deed. (*Kellogg* v. *Thompson*, 66

N. Y. 89; *Murray* v. *Marshall*, 94 id. 617; *White* v. *Cotz hausen*, 129 U. S. 329; *Preston* v. *Spaulding*, 120 Ill. 208; *Richardson* v. *Thurber*, 104 N. Y. 606.) It appears from the findings that the judgment was confessed almost simultaneously with the execution and delivery of the assignment deed, and in contemplation thereof, for the purpose of preferring the judgment creditor for more than one-third of the assets in fraud of the assignment and for the purpose of preventing the assets from going into the hands of the assignee and being distributed pursuant to the terms of the assignment deed. It should be set aside. (*Preston* v. *Spaulding*, 120 Ill. 208; *White* v. *Cotzhausen*, 129 U. S. 329; *Berry* v. *Cutts*, 42 Me. 445; *Holt* v. *Bancroft*, 30 Ala. 195; *Van Patten* v. *Burr*, 52 Iowa, 518; *Fuller* v. *Hasbrouck*, 46 Mich. 81; *Livermore* v. *McNair*, 34 N. J. Eq. 478.) It is of no consequence what intention the appellant had in accepting the preference. It is sufficient if the debtors unlawfully intended to violate the law in confessing the judgment. (3 R. S. [8th ed.] 2592, § 1; *I. Watch Co.* v. *Payne*, 11 N. Y. Supp. 410; *Starin* v. *Kelly*, 88 N. Y. 419; *Loos* v. *Wilkinson*, 110 id. 195; *Preston* v. *Spaulding*, 120 Ill. 220.) There is nothing in appellant's contention that, having obtained the judgment, which is a contract, it was unconstitutional to violate its obligation. (*Richardson* v. *Thurber*, 104 N. Y. 612.) The fraudulent preference sought to be given to George E. Varrelmann falls with his judgment. The preferred creditors under the assignment deed can alone receive preferences, but only to the extent of one-third of the entire assets. (*Spellman* v. *Freedman*, 54 Hun, 414; *Wilcox* v. *Payne*, 8 N. Y. Supp. 407.)

FOLLETT, Ch. J. The judgment which the appellant obtained by the confession of his debtors is sought to be set aside and the money collected by virtue of it recovered for the benefit of the creditors of the judgment debtor, on the ground that when confessed the confessors intended to make a general assignment and prefer the claim of the appellant

through a judgment and execution, and thereby evade the prohibition of the thirtieth section of the Assignment Act, which is as follows :

" § 30. In all general assignments of the estates of debtors for the benefit of creditors hereafter made, any preference created therein (other than for the wages or salaries of employes under chapter three hundred and twenty-eight of the laws of eighteen hundred and eighty-four, and chapter two hundred and eighty-three of the laws of eighteen hundred and eighty-six) shall not be valid except to the amount of one-third in value of the assigned estate left after deducting such wages or salaries, and the costs and expenses of executing such trust; and should said one-third of the assets of the assignor or assignors be insufficient to pay in full the preferred claims to which, under the provisions of this section, the same are applicable, then said assets shall be applied to the payment of the same *pro rata* to the amount of each said preferred claims." (Chap. 503, Laws of 1887.)

The appellant insists that his judgment and execution by which he secured more than one-third of the estate of the insolvent debtors are not brought within the prohibition of the section, because : (1) The trial court did not find as a fact that the debtors contemplated making a general assignment when the judgment was confessed.   (2) The trial court did not find as a fact that the appellant knew when he received the confession of judgment and seized the property by virtue of the execution issued thereon that the debtors contemplated making a general assignment.   (3) The preference was not created in the general assignment, but by a separate instrument.

Before this section was added in 1887 to the General Assignment Act of this state, the practice, which had become so prevalent that it may be said to have become a custom for failing debtors to devote by general assignment the whole or a large part of their estates to the payment of a few preferred creditors, often near relatives, resulted in so much hardship and injustice that the section above quoted was adopted to mitigate the evils arising from the practice.   The section being

remedial, should be liberally construed so as to prevent the mischiefs at which it was aimed. ( *White* v. *Cotzhausen*, 129 U. S. 329 ; *Hudler* v. *Golden*, 36 N. Y. 446 ; *Hart* v. *Cleis*, 8 Johns. 41.)

The trial court found that the estate of the assignors was not worth three times the amount of the appellant's judgment, and that its collection consumed more than one-third of it, and that when the judgment was confessed, execution issued and levied and the assignment executed, the assignors and George E. Varrelmann all knew that the sale under the execution to be issued would absorb more than one-third of the debtors' assets. The decision signed by the trial judge contains seventeen findings of fact and seven conclusions of law, the first and second of the latter are as follows :

"*First.* The judgment confessed in favor of the defendant George E. Varrelman, and the execution and levy which followed were made by the defendants Henry Erdtmann and Gustave Varrelmann, in contemplation of their general assignment and as part thereof, and for the purpose of preferring said defendant, George E. Varrelmann, in whose favor the said judgment was confessed by them, out of their property, for more than one-third of the net assets of the said defendants, Henry Erdtmann and Gustave Varrelmann, and to prevent the said assets from going into the hands of the defendant Kracht, as assignee, and being distributed to the plaintiffs, and the other creditors of the said defendants, Henry Erdtmann and Gustave Varrelmann, pursuant to the terms of their general assignment deed.

" *Second.* Said confession of judgment and the execution and levy which followed were made in fraud of the said general assignment, and are void, and should be set aside and vacated, and the assets levied upon, or the entire proceeds thereof, should be paid the defendant Kracht, as assignee, to be distributed pursuant to the terms of the deed of general assignment."

The learned counsel for the appellant insists that these conclusions cannot be given the effect of findings of fact,

but must be held to be conclusions of law, and that the facts.
so found cannot be considered on this appeal. This con-
tention is not well founded, for it is well settled that though
a "finding of fact" be called a "conclusion of law" and
improperly classified as such in the decision signed (Code C.
P. § 1022), it will, for the purpose of upholding a judgment,
be given the same effect as though embraced within and
designated as one of the findings of fact. (*Parker* v. *Baxter*,.
86 N. Y. 586; *Murray* v. *Marshall*, 94 id. 611; *Adams* v.
*Fitzpatrick*, 125 id. 124.)

The facts found in the conclusions of law above quoted —
that the assignors confessed the judgment in contemplation
of making a general assignment as a part thereof, and for
the purpose of preferring George E. Varrelmann for more.
than one-third of their estate, that the confession of judgment
the execution and levy were made in fraud of the general
assignment will be given the same force in support of this.
judgment as though they had been properly classified in the
decision signed.

It would not be claimed, we think, that a preference for
more than one-third of the assigned estate, when created by an
instrument known as a general assignment, would be valid,
though executed without the knowledge of the preferred cred-
itors. If such a position could be successfully maintained, the
section would be wholly inoperative, as it would be quite easy,.
as, indeed, it is frequently the practice, to execute those instru-
ments without consulting the favored creditors. If the absence
of pre-knowledge on the part of the creditors that a preference.
is to be created by an assignment does not strengthen their
position, it is not easy to see how the want of knowledge that
an assignment is contemplated would avail them, though the.
preference be created by an independent instrument. This.
section is designed to limit the power of insolvents to create
preferences beyond the extent named, and to regulate their
conduct, but not to control the action of creditors, who are
left free to collect or secure their claims by the usual remedies.
It is the action of the insolvent debtors which the law seeks to.

control. (*Home National Bank of Chicago* v. *Sanchez*, 131 Ill. 330.)

The only remaining question is whether a preference by insolvents not created in or by a general assignment, but by a separate instrument and in contemplation of making a general assignment, is prohibited by the statute.

We are asked to construe the language — "In all general assignments of the estates of debtors for the benefit of creditors hereafter made, any preferences made therein  \*  \*  \* shall not be valid, except," etc.— closely, and hold that preferences not created in instruments known as general assignments are not within the condemnation of the section. Such an interpretation would defeat the intent of the legislature, and the statute would be found to be no bar to the practices at which it was aimed. Insolvents would be left free to secure their friends by independent instruments, executed in contemplation of making general assignments, which, when executed, would carry to their assignees but a remnant of their estates, for the benefit of their unfavored creditors. The words of the section must be construed to embrace all of the instrumentalities which failing debtors, in contemplation of a general assignment, voluntarily employ to give preferences to particular creditors. As was said by FINCH, J., in *Richardson* v. *Thurber* (104 N. Y. 610): "The word 'assignment' may sometimes have reference to the instrument which affects the transfer and sometimes to the transfer itself, considered as a legal effect or result."

The section under consideration was intended to prevent the forbidden result, whether accomplished within or without the general assignment. This question has been several times before the Supreme Court in this state, and conveyances which created preferences for more than one-third of the insolvent's estate, when made in contemplation of a general assignment, have invariably been condemned as violations of the statute. (*Manning* v. *Beck*, 54 Hun, 102 ; *Spelman* v. *Freedman*, Id. 409 ; *First National Bank* v. *Bard*, 59 id. 529 ; *Sweetser* v. *Smith*, 5 N. Y. Supp. 378 ; 20 N. Y. St. Rep. 62 ; *Spelman*

v. *Juffray*, 6 N. Y. Supp. 570; *Kessell* v. *Drucker*, Id. 945; *Abegg* v. *Schwab*, 24 N. Y. St. Rep. 986; Aff'd 31 id. 139; *Wilcox* v. *Payne*, 28 id. 712.)

The question has also been considered by the courts of other states under similar statutes, forbidding or regulating preferences in voluntary or general assignments for the benefit of creditors.

In Illinois, the act is entitled "An act concerning voluntary assignments, and conferring jurisdiction upon county courts. Approved May 22, 1877," and contains fourteen sections. The first prescribes the mode in which assignments shall be executed, and is, in part, as follows:

"§ 1. Be it enacted by the people of the state of Illinois, represented in the general assembly, that in all cases of voluntary assignments hereafter made for the benefit of creditors, the debtor or debtors shall annex to such assignment an inventory," etc.

The succeeding eleven sections prescribe the power and duties of assignees and the procedure by which voluntary assignments are to be carried into effect. The fourteenth section confers jurisdiction upon the County Courts to carry out the provisions of the act. The thirteenth section provides:

"§ 13. Every provision in any assignment hereafter made in this state providing for the payment of one debt or liability in preference to another shall be void, and all debts and liabilities within the provisions of the assignment shall be paid *pro rata* from the assets thereof."

The question has several times arisen whether preferences created, not in a voluntary assignment, but by instruments executed at about the same time and in contemplation of making a general assignment, were within the statute. In *Preston* v. *Spaulding* (120 Ill. 208), the insolvents preferred certain of their creditors by confessing judgments, and on the same day that their general assignment for the benefit of creditors was made. The point was taken that the statute made void only preferences *in* the general assignment, and not those otherwise given. In discussing this question it was said:

" We hold that it is within the spirit and intent of the statute that when a debtor has formed a determination to voluntarily dispose of his whole estate, and has entered upon that determination, it is immaterial into how many parts the performance or execution of his determination may be broken; the law will regard all his acts, having for their object and effect the disposition of his estate, as parts of a single transaction, and on the execution of a formal assignment will, under the statute, draw to it, and the law will regard as embraced within its provisions, all prior acts of the debtor having for their object and purpose the voluntary transfer or disposition of his estate to or for creditors; and that any preference so shown to have been made or given by the debtor to one creditor over another in such disposition of his estate, full effect will be given to the assignment, and such preference will, in a court of equity, be declared void and set aside as in fraud of the statute." This doctrine has been approved in subsequent cases in that state, and also in the Supreme Court of the United States in *White* v. *Cotzhausen* (129 U. S. 329), which arose under the Illinois statute. In that case an insolvent debtor, by deeds, bills of sale and warrants for the confession of judgments, disposed of all his property for the benefit of his brothers and sisters, who were creditors, but made no general assignment. In an action brought in the Circuit Court of the United States to set aside the conveyances as violations of the thirteenth section of the Voluntary Assignment Act, it was held that it was quite immaterial that no general assigment had been executed, but that any preference, however created, by an insolvent while engaged in making a complete disposition of his property, was forbidden and void under the act. The judgment of the Circuit Court was placed in part upon the ground that the conveyances and confessions of judgment " were made without adequate consideration and with intent to hinder, delay and defraud the appellee, Cotzhausen " (p. 333), the complaining creditor, but the judgment of the Supreme Court was not rested upon that ground. It was said: " We have already seen that the Circuit Court proceeded upon the

ground that the conveyances, bill of sale, confession of judgment and transfers by Alex. White, Jr., were made without adequate consideration and with intent to hinder, delay, and defraud the appellee. Upon these grounds it gave him a prior right in the disposition of the property. We are not able to assent to this determination of the rights of the parties; for the mother, sisters and brother of Alex. White, Jr., were his creditors, and, so far as the record discloses, they only sought to obtain a preference over other creditors." (Page 344.)

The reference to *White* v. *Cotzhausen* must not be taken as an indication of approval, nor this cautionary remark as an intimation that we disapprove of the doctrine that when an insolvent, without making a general assignment, transfers his entire estate to favored creditors by several instruments, it is a violation of the section, but the case is instructive in its reasoning, and shows the trend of courts when called upon to consider like statutes. In this state the Supreme Court (*Stein* v. *Levy*, 55 Hun, 381), one judge dissenting, has declined to follow the doctrine of the case cited to its logical conclusion. In Pennsylvania it has been held (*Lake Shore Banking Co.* v. *Fuller*, 110 Penn. St. 156), that a confession of judgment to a *bona fide* creditor by an insolvent, on the eve of making a general assignment for the benefit of creditors, is not a violation of the statute which forbids preferences in assignments; but in most of the states the construction which we have indicated prevails.

Thus far this case has been considered upon the theory that the appellant had no knowledge when he took his confession of judgment that his confessors contemplated making a general assignment, and we think it might well be decided upon that theory. But it is urged by some of our brethren that there being no express finding of fact that the appellant knew that the judgment debtors intended to make an assignment when the confession was taken that his judgment should not be set aside, but allowed to stand as a valid preference to the extent of one-third of the estate of the assignors. We think a sufficient answer to this suggestion is that the appellant makes no

such claim, but from the first to the last he has planted him-self upon the ground that in the absence of an explicit finding that he knew that a general assignment was intended, he is entitled to sustain his judgment and retain the whole sum collected thereby. No such question was raised at Special Term, at the General Term, nor is it suggested in his brief on this appeal.

There is a further answer to this position : As before stated, the record before us contains none of the evidence. "Where the evidence given on a trial is not contained in the case on appeal to this court it must be assumed that the facts proved were sufficient to sustain the findings, and also to sustain any additional findings required to support the conclusions of law not in conflict with the affirmative facts found." (*Gardiner* v. *Schawb*, 110 N. Y. 650 ; *Murray* v. *Marshall*, 94 id. 611, 617 ; *Reese* v. *Boese*, Id. 623 ; *Kellogg* v. *Thompson*, 66 id. 88 ; *First Nat. Bank* v. *Wood*, 45 Hun, 413 ; *Bond* v. *Bond*, 51 id. 507.)

An assumption that George E. Varrelmann knew that the judgment debtors contemplated a general assignment is not in conflict with any of the affirmative facts found, nor is it in conflict with any facts which the court refused to find. The record does not disclose that the court refused to find any facts which were requested by either party. As before stated, the court found as facts that "said confession of judgment and the execution and levy which followed were made in fraud of said general assignment." The judgment by confession was the joint act of the judgment debtors and of the judgment creditor, which is found to have been made in fraud of the assignment. Issuing the execution, causing a levy and sale to be made, were the individual acts of George E. Varrelmann, which the court found were in fraud of the assignment. These facts so expressly found with the other significant facts found and admitted by the answers, to wit : The relationship existing between the parties, that the assignment, the confession of judgment, and the issuing of the execution and levy thereunder, were concurrent acts performed on the same after-

noon taken in connection with the knowledge of Varrelmann that his judgment, execution and levy would absorb much more than one-third of the assets of the firm, seem to us to require this court, under the rule laid down, to infer in support of this judgment, which is so apparently an equitable one, that George E. Varrelmann knew when he took his judgment and made his levy that his son and the partner of his son then contemplated making a general assignment. If he was not aware of their purpose, it is quite singular that the steps which he took were so timely and happily taken as to accomplish the absorption of the entire assets of the assignors. We think these various proceedings were not the result of accident, but of design. This judgment confessed in fraud of the assignment cannot be regarded as part of it, for both parties to the judgment say it was not so intended, but if it could be, may be cut down by any act of the assignors which would invalidate a general assignment, and the fraud of the assignors, though not participated in by those benefited, avoids a general assignment. (*Loos* v. *Wilkinson*, 110 N. Y. 195.)

The judgment should be affirmed, with costs.

BRADLEY, HAIGHT and BROWN, JJ. (dissenting). We are unable to concur with the majority of the court. The record does not contain the evidence. And the facts found do not warrant the conclusion that the appellant took the judgment by confession otherwise than in good faith for a valid debt and without any knowledge or information that the debtors contemplated making an assignment for the benefit of their creditors.

In that view no reason appears to us for setting aside the judgment; and it is the right of the creditor to retain it, as it was to take it pursuant to the statute providing for that method of taking judgments. But inasmuch as the confession of it was made by the judgment debtors in contemplation on their part of the general assignment which was soon after made by them, and treating it as part of the scheme or transaction of their assignment so far as they were concerned, the sale on

the execution of the judgment was properly set aside and direction given for the payment of the proceeds of the sale to the assignee for distribution in execution of his trust.   In that view the creditor taking the judgment should not be denied entirely the benefit of the preference which it and the levy of his execution apparently gave him, but he should at least be treated as a preferred creditor, and the amount of one-third of the estate of the assignors left after making the deduction directed by the statute should, treating him as such, be applied *pro rata* amongst the preferred creditors as their rights in that respect may appear.   Otherwise, his means as such judgment creditor to realize anything upon his debt may be entirely defeated.   And the rule adopted that the judgment in such case be set aside may well have the effect to discourage the taking of judgments by confession as perchance it may be followed by a general assignment of a debtor making such confession.   It would seem to us in such case more in accordance with principle to set aside the assignment as well as the judgment confessed rather than to set aside the latter and permit the former to stand; and such discrimination against the judgment creditor cannot properly be made unless he is chargable with a fraudulent intent as against the creditors of his judgment debtor in taking his judgment.

Our conclusion is that unless the plaintiffs stipulate to modify the judgment as above suggested the judgment should be reversed and a new trial granted, costs to abide the event, and in case they do so stipulate the judgment be modified accordingly without costs.

All concur with FOLLETT, Ch. J., except BRADLEY, HAIGHT and BROWN, JJ., dissenting.   .

Judgment affirmed.