FRANCIS B. BREWER, RESPONDENT, v. JAMES E. FORD, APPELLANT.

*Contract of sale — provision that it should be conditional and that the title to a certain part of the property should not pass until paid for, when applied to all the property — election of remedies.*

In an action of trover to recover from an assignee for the benefit of creditors of a firm, known as The Clark Manufacturing Company, the value of certain property which had come into his hands, it appeared that one, Brewer, the plaintiff in the action and The Clark Manufacturing Company had entered into an agreement prior to the assignment, by which certain machinery, patterns and merchandise were transferred from the plaintiff to the company to be paid for in installments, represented by certain promissory notes of the latter. The agreement provided that " said machinery shall be the property of said Brewer, in care and custody of said Mix Brothers until paid for."

When this action was begun three of the promissory notes, of $1,000 each, remained unpaid, of which only one was due at that time.

It was claimed that the word "machinery" did not include the patterns, which
were valued at $3,400 of the original purchase-price. The contract provided
that the plaintiff agreed to sell to the defendant's assignor "a certain amount of
machinery and all patterns pertaining to lock business; * * * said machinery
shall be the property of said Brewer, in care and custody of said Mix Brothers
until paid for, * * * and The said Clark Manufacturing Company agree
to make the above-described purchase upon the conditions therein set forth and
recited."

*Held*, that the obvious intention of the contract was that the sale should be con-
ditional, and that the title should be retained by the seller to the whole of the
property transferred, and that this would bring the patterns within the scope of
the word "machinery," even though they might not be properly machinery-
(CORLETT, J., dissenting.)

The right of the plaintiff to bring an action for the conversion of the articles sold,
and to sue on the notes given on the making of such contract and the question
of election of remedies, considered.

APPEAL by the defendant James E. Ford from a judgment of the
Supreme Court, entered in the office of the clerk of the county of
Erie on the 17th day of April, 1890, in favor of the plaintiff, and
from an order denying the defendant's motion for a new trial, made
on the minutes of the court and entered in the office of the clerk of
the county of Erie on the 25th day of February, 1890, after a trial
before the court and a jury at the Erie Circuit, at which a verdict
was rendered in favor of the plaintiff for $3,515.

*Frank C. Ferguson*, for the appellant.

*William C. Fitch*, for the respondent.

MACOMBER, J. :

This action is trover to recover of the defendant, who is the
assignee for the benefit of creditors of a firm known as The Clark
Manufacturing Company, the value of certain property which came
into his hands as such assignee. The plaintiff and the defendant's
assignors entered into an agreement January 29, 1880, by which a
given quantity of personal property, consisting of machinery,
patterns and merchandise, was transferred from the former to the
latter, to be paid for in installments represented in amount by promis-
sory notes ranging in times of payment between April 1, 1881, and
April 1, 1889. When this action was begun (April 17, 1887) three
of such notes of $1,000 each remained unpaid, but only one of

them was due at that time. By the terms of the contract between the original parties it was agreed that "said machinery shall be the property of the said Brewer, in care and custody of said Mix Brothers until paid for."

Upon the first trial objection was made by the defendant that no recovery could be had except upon a surrender of such outstanding notes. The justice presiding made a ruling to that effect and afforded the plaintiff an opportunity to surrender the notes, which was declined by counsel who had the notes in court, and who claimed the right to collect upon the notes any sum over and above the amount of the verdict which the jury might render in this action. A verdict for the defendant was accordingly directed. On appeal to this court the judgment entered thereon and an order denying a motion for a new trial were reversed and a new trial granted. (*Brewer* v. *Ford*, 26 N. Y. St. Rep., 888; 7 N. Y. Supp., 244.) The prevailing opinion placed the decision upon the ground that the action might be maintained without tendering the unpaid notes, because, as was there decided, the seller was confined in his remedy neither to a repossession of the property nor to the notes, but could avail himself of both. The dissenting opinion was, in substance that, by holding on to the commercial paper, the plaintiff assumed an attitude in this forum so inconsistent with the claim made in the complaint that the court could not properly permit him to proceed, for otherwise the rescission of the original contract, which the beginning of this action necessarily made, would not be a real but a sham rescission, and an action might still be maintained upon each of the outstanding notes; and that the active duty rested upon the plaintiff to restore, before recovering a verdict in this action, the unpaid paper still held by him. But, as stated above, a majority of the court decided otherwise, and held that the plaintiff had his cumulative remedy of recovering the property or its value on the ground that no sale of it had been made, and prosecuting the outstanding notes to judgment, or proving them for payment or dividends against the defendant as assignee of the estate of The Clark Manufacturing Company, upon the ground that the property had been sold to the defendant's assignors and that a debt existed therefor. The case was treated as though the plaintiff held a chattel mortgage as collateral security for the unpaid purchase-money.

The new trial has been conducted in accordance with the prevailing opinion of this court on the former appeal. The same persistent purpose to affirm and disaffirm the original contract prevails throughout the case. The counsel for the plaintiff, in the course of the trial, said: "Now, if the court please, I have here the three notes in question; I offer to place them in the possession of the court, or with such person or persons as the court may direct for the purpose, and with authority to indorse upon these notes whatever recovery may be obtained in this action; and if the recovery is equal to the amount of the notes, then that the notes may be surrendered to such person or persons as the court may direct; if the recovery is less than the amount of the notes, then the amount of such recovery to be indorsed upon the notes as so much payment."

It was this attitude of counsel which induced the direction of the verdict at the first trial, which decision, on appeal, a minority of the court held to be correct. But the court held otherwise. Except for the authority of that decision, adherence to precedent, as well as legal principle, would, in my judgment, lead to a different result. But that judgment was given in this case on facts in no wise materially different from those now before us. It stands, therefore, *res adjudicata*. It is binding and conclusive on this and all courts of concurrent power. The present case is identical with the former appeal in the parties, in the cause of action, and in the thing sued for. It was manifestly tried in accordance with the decision of this court previously rendered. We are not, consequently, at liberty to revise the former adjudication, though the present majority of the court are committed against it.

There remain, therefore, to be considered by us only such subsidiary questions, if any, arising on the second trial, as were not in the former case.

It is contended by the appellant that even though there may be a recovery for certain articles, there can be none for the patterns, for the reason, as is stated, that they are not "machinery," and, consequently, the clause of the agreement retaining title in the vendor does not apply to them. By the terms of the contract the plaintiff agreed to sell to the defendant's assignors "a certain amount of machinery and all patterns pertaining to lock business. * * * Said machinery shall be the property of said Brewer in care and

custody of said Mix Brothers until paid for.   \*   \*   \*   And the said Clark Manufacturing Company agree to make the above described purchase upon the conditions therein set forth and recited."

It is now argued that the word " machinery " does not include the patterns which were valued at $3,400 of the original purchase. An attentive perusal, however, of the contract leads quite irresistibly to the conclusion that if the sale was conditioned in any part and the title retained by the seller to any of the property until paid for, such condition and retention of title related to the whole of the property transferred. This obvious intention of the parties would overcome the restricted meaning given by the appellant to the word " machinery," and bring the patterns within its scope even though, except in a metaphorical sense, the patterns may not be machinery. But they clearly are a part of the machinery. The word was here used in its most comprehensive sense, and included all the devices, tools and implements used in the manufacturing business for which they were bought. (*Buchanan* v. *Exchange Fire Ins. Co.*, 61 N. Y., 33.)

It is also claimed by the appellant that a written certificate, signed by the plaintiff on the 21st day of October, 1887, six months after this action was begun, to the effect that the payments which had been made by the purchasers had been applied, first, on the merchandise ; and, secondly, on the patterns, the surplus to apply on the residue of the indebtedness, shows that the patterns have been paid for, and that, consequently, title to them passed absolutely to The Clark Manufacturing Company. But such certificate, in the absence of some agreement that title to certain classes of the property should become absolute when a given amount of the purchase-money had been paid, which is nowhere shown, is meaningless and has no bearing upon the question.

The case is not materially different from the record of the former appeal. It follows, therefore, in pursuance of such previous decision, that the judgment and order appealed from should be affirmed.

DWIGHT, P. J., concurred in the result.

CORLETT, J. (dissenting) :

In 1880, The Clark Manufacturing Company was doing business in making builders' hardware in the city of Buffalo. On the twenty-

ninth day of January of that year the following agreement was made between the plaintiff and the company:

> " OFFICE OF WESTFIELD LOCK WORKS,
> WESTFIELD, N. Y., *January* 29, 1880, }

" Memorandum of agreement made the day above written between F. B. Brewer, of Westfield, N. Y., and The Clark Manufacturing Company, of Buffalo, N. Y. F. B. Brewer agrees to sell to the Clark Manufacturing Company a certain amount of machinery and all *patterns* pertaining to lock business now owned by him in the lock factory in Westfield. A list of said machinery has been made and the prices fixed, and the amount will be about seven thousand dollars, more or less, the transfer to be made on or about the first day of April, when any changes which Mix Brothers may deem necessary or expedient in choice or character of the machinery, or the price of machinery or merchandise, shall be finally established. Said machinery shall be the property of said Brewer, in care and custody of said Mix Brothers until paid for. The said Brewer agrees to accept in payment for said purchase, as conditioned above, five hundred dollars on the first day of April, prox., five hundred dollars, with interest on whole amount unpaid on the first day of April, 1881, and $1,000.00 and interest on whole amount unpaid on the first day of April thereafter until all is paid. Notes to be given for the several amounts. And the said Clark Manufacturing Company agree to make the above-described purchase upon the conditions therein set forth and recited. For the faithful performance of the above-written agreement the parties bind themselves, each to the other, in the sum of five thousand dollars, as witness their hands and seals, day and date above written.       " FRANCIS B. BREWER.       [L. S.]

" THE CLARK MANFG. CO." [L. S.]

On the 21st day of October, 1887, the plaintiff made the following memorandum:                    "*October* 21, 1887.

" I hereby certify the payments which have been made to me by The Clark Manufacturing Company, in pursuance of contract and notes given to me, have been applied, first, on merchandise, second, on *patterns*, and third, all surplus to apply on balance of their indebtedness.                    " F. B. BREWER."

Negotiable notes were executed and delivered in pursuance of the contract. All the notes were paid, including interest on the three last of a thousand dollars each, to April 1, 1887. On the seventeenth day of that month the firm made a general assignment for the benefit of creditors to the defendant. The plaintiff, on the fifth day of May of that year, made the following demand in writing :

" To JAMES E. FORD, Esq. :

" DEAR SIR.— You will please take notice that I, the undersigned, am the owner and entitled to the immediate possession of the machinery and personal property hereinafter described, now in your possession and under your control, and of the value set opposite each item respectively, to wit. : "

Then comes a statement of the property, consisting mostly of machinery, and also the following :

" Patterns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $3,400 00."

The whole value of the items stated in the demand is $3,539. The demand closes with the following :

"And you will further take notice that I do hereby require and demand the possession or delivery of said *machinery and personal property* to me from you.

" Dated this 5th day of May, 1887.

" FRANCIS B. BREWER,

" <em>Claimant.</em>"

The defendant did not deliver the property, and on the 12th day of May, 1887, the plaintiff brought trover, alleging the conversion of the above articles of property and demanding judgment for $5,000. Issue was joined, the cause was first tried at the Erie Circuit in October, 1887, when the court directed a verdict for the defendant. On appeal a new trial was granted. (*Brewer* v. *Ford*, 26 N. Y. St. Rep., 888.) The cause was again tried in February, 1890, and resulted in a verdict of $3,515 for the plaintiff. A motion for a new trial was made and denied, judgment was entered on the verdict and the defendant appealed to this court from the judgment and order.

It appeared on the trial that the prices finally fixed amounted in the aggregate to nine thousand dollars instead of seven, as first estimated ; that $6,000 of principal, also interest on the whole

amount secured, were the sums paid in all by the firm. The agreed price of the machinery and tools when purchased was $3,585, and the patterns $3,400, and of the merchandise $2,015. All the payments had been made before the making of the certificate, a copy of which appears above. The evidence also tended to show that the three unpaid notes, before they fell due, were sold by the plaintiff to the Westfield Bank, indorsed by him; that he afterwards paid them and had them in his possession at the last trial when they were all due. There was considerable evidence given on the subject of the value of the property on the trial. Some of the plaintiff's evidence tended to show that the property alleged to be converted was equal, if not greater, in value than the verdict. While the evidence on the part of the defendant tended to show that the property was very much less in value, and there was some evidence on the part of the plaintiff to the same effect.

The trial justice charged the jury, in substance, that, if they found for the plaintiff, their verdict would be the value of the property, with interest from the time of the conversion, but that it could not be more than the amount unpaid on the notes, including interest. The verdict was for the exact amount unpaid upon the notes. The evidence on both sides tended to show that the property referred to in the agreement was delivered to the defendant's assignors; that the patterns were frequently changed or replaced, and that the other property, except the machinery, had been to a considerable extent disposed of. All the evidence showed that the value of the machinery, outside the patterns, was very much less than the verdict.

The first question which naturally presents itself is whether the plaintiff could so far disaffirm the conditional sale as to maintain trover for the property, and then recover the amount unpaid on the notes. The rule in reference to the election of remedies is very familiar. In the case at bar the plaintiff could have enforced payment of the notes by action, and if he failed to collect, he could take the machinery the title to which, by the terms of the contract, was to remain in him until payment; or on default he could bring replevin or trover. Either action necessarily proceeds on the assumption that all the rights of the defendant under the contract are ended, and that by reason of default in payment the plaintiff could retake his property, having never parted with the title. Trover

involves a wrongful conversion. In other words, the action could not be maintained unless retention of the property by the defendant was wrongful. It needs no argument to prove that the retention of the property would not be wrongful so long as the plaintiff looked upon the executory contract as continuing and the right to recover the unpaid purchase-money unimpaired.

The theory of a conversion and the continuance of the contract so that the unpaid purchase-money could be collected is entirely inconsistent. The plaintiff had his election to pursue any of his remedies, but having elected one remedy all others are irrevocably gone. (*Fowler* v. *Bowery Savings Bank*, 113 N. Y., 450; *Rodermund* v. *Clark*, 46 id., 354; *Steinbach* v. *Relief Fire Ins. Co.*, 77 id., 498; *Andrews* v. *Ætna Life Ins. Co.*, 92 id., 596; *The Second Nat. Bank of Oswego* v. *Burt*, 93 id., 233; *Bowen* v. *Mandeville*, 95 id., 237; *Moller et al.* v. *Tuska*, 87 id., 166; *Sweetser* v. *Smith*, 20 N. Y. St. Rep., 62; *S. C.*, 22 Abb. N. C., 319.)

In the case last cited, *Powers* v. *Benedict* (88 N. Y., 610), is shown to decide no different doctrine, it being there merely held that a replevin suit where all the property was not taken would not prevent a pursuit of other property.

The learned counsel for the respondent in his brief correctly states his position in saying : " This action is brought upon the conditional contract of sale, *and it is by virtue of the contract itself and in pursuance of its terms, and, therefore, an enforcement of said contract, and not a rescission thereof.* The parts italicized are so in the brief.

The trial justice adopted this view, and all his rulings were based on the assumption that the plaintiff could maintain trover, and also recover in an action on contract the balance unpaid upon the notes. The amount paid by the defendant's assignors on the conditional contract was in pursuance of its provisions, and no reason is seen why the defendant should be entitled to recover back the sums paid; but a different question arises as to the unperformed part of the contract. When the action was brought there were outstanding negotiable notes not then due. The plaintiff elected to treat the conditional sale as ended, and the continued possession of the property in the assignors or their assignee as wrongful, which

entitled the defendant to the return of the unpaid notes. The moment he took this position it logically and necessarily followed that from the time of this election he treated the executory contract as at an end. He could not on the one hand enforce payment under the provisions of the contract and on the other repudiate it, and recover the property or its value in an action of tort.

On the former appeal the learned justice, delivering the prevailing opinion, states, among other things : " The plaintiff had the right to take possession of the property as against his vendee for the purpose of *preserving his security* and enforcing his right to have the property devoted to the payment of his debt.

It is obvious that the learned justice fell into the error of assuming that title had vested in the defendant's assignors,. and that the plaintiff held the property simply as security. The distinction between a conditional sale and a chattel mortgage does not seem to have been noticed. In the present case the defendant's assignors obtained no title, but were merely bailees for the plaintiff. (*Comer* v. *Cunningham*, 77 N. Y., 391–398; *Austin* v. *Dye*, 46 id., 500; *Herring* v. *Hoppock*, 15 id., 409; *Ballard* v. *Burgett*, 40 id., 314.)

A demand of the property and the bringing of trover was decisive of the election of the plaintiff to treat the conditional contract as ended. (*Kinney* v. *Kiernan*, 49 N. Y., 164.) All the cases agree that inconsistent remedies cannot be pursued. (*Dodge* v. *Fearey*, 19 Hun, 277; *Cobb* v. *Hatfield*, 46 N. Y., 533; *Gould* v. *Cayuga Co. Nat. Bank*, 21 Hun, 293; affirmed, 86 N. Y., 76; *Riley* v. *Albany Savings Bank*, 36 Hun, 513–522; *Iselin* v. *Henlein*, 16 Abb. N. C.,. 73–80; *Bowker Fertilizer Co.* v. *Cox*, 106 N. Y., 555; *Avila* v. *Manhattan Chem. Co.*, 32 Hun, 1; *Wile* v. *Brownstein*, 35 id., 68.) The same doctrine applies to conditional sales. (*Heinbockle* v. *Zugbaum*, 5 Mont., 344; S. C., 51 Am. Rep., 59; *Campbell Printing Press Co.* v. *Walker*, 43 Hun, 449–451, 452; S. C., 6 N. Y. St. Rep., 731.)

The trial in this case proceeded on the assumption that this action was entirely consistent with a recovery upon the notes for any deficiency. The learned counsel for the respondent argues that, inasmuch as the court charged that there could be no recovery beyond the amount unpaid on the notes, with interest, and as the

verdict was exactly that sum, that, even if the trial proceeded on a wrong theory, the defendant was not injured. The difficulty with this reasoning is that it assumed the plaintiff's right to recover the value of the property in trover, and also the balance unpaid upon the notes on contract; also, that it is impossible to know to what extent the wrong theory adopted on the trial affected the amount of the verdict. The jury had a right, and assumed that, in one sense, they were finding a verdict for the amount due the plaintiff. It is true that the value of the property would determine the amount of the verdict, but it is clear that the theory of the trial induced the jury to take into consideration the amount due upon the notes in estimating this value. There was no evidence showing that the value of the property was the precise amount due upon the notes. If the jury had been instructed that the plaintiff's election to bring trover would prevent an action on the notes, other considerations might have influenced them in determining the question of value.

Machinery is defined by Webster as : " The *working parts* of a machine, engine or instrument, arranged and constructed so as to apply and regulate force, as the machinery of a watch ; hence the means and appliances by which anything is kept in action." Worcester's definition is: " An artificial work which serves to apply or regulate moving power, or to produce motion ; an engine ; a piece of mechanism."

The contract is : " Said machinery shall be the property of said Brewer." More than seven years later the plaintiff construed this clause by stating that the amounts paid had been applied, first, on merchandise ; second, on patents ; and, third, all surplus to apply on balance of their indebtedness. No indebtedness appears, except for merchandise, patterns and machinery. The payments made were. therefore, naturally applied in the extinguishment of those portions of the debt arising from the sale of property, the title to which passed ; but as to the machinery, the title to which was retained in the plaintiff, no applications were made until the rest of the indebtedness was paid.

A pattern is a mere model which may be used to construct machinery and create working implements, and such are the above definitions. But it cannot be said with any force or plausibility that a model or pattern is a machine within any known definition

of that term.   The contract itself makes a distinction between patterns and machinery.

Where property is delivered under a contract of sale, no construction should be adopted retaining title in the vendor without clear and unambiguous language.   It is generally true that delivery in pursuance of a contract of sale is presumed to vest title in the vendee, and if for any reason it is retained in the vendor, this is so by virtue of the terms of the contract.   In addition to this, the demand itself speaks of machinery *and other personal property*, and in the bill of items the machinery is given in detail, while the patterns are lumped up by the use of that word, and valued at $3,400.   Besides, models or patterns are frequently changed or modified, as was the case in this manufacturing establishment.

To retain title in the vendor of those originally delivered would breed uncertainty and confusion.   The contract limited the retention of title in the vendor to machinery, which, in its nature, is more permanent and traceable.

*Buchanan* v. *Exchange Fire Insurance Company* (61 N. Y., 26) is entirely consistent with the above views.   In that case a policy of fire insurance was issued upon a stock of materials for manufacturing paper, and on paper manufactured and in process of manufacture, and on machinery contained in a paper mill at West Milton, Saratoga county.   In the syllabus it is stated that the word " machinery," as used in the policy, included not only the machines, but the tools and implements used therewith for the manufacture of paper.

The case does not show what these tools or implements were, and the only reference made to the subject is at the close of the opinion, and is in the following language :

" The loss upon machinery, as claimed by the plaintiff in his inventory, was $1,913.66.   This was covered by insurance in this company for $500.00, and in two other companies, each for $500.00, making in all $1,500.00, which was upward of $400.00 less than the loss.   Even if a few of the items contained in the inventory were not actually machinery, the value of such items was not $400.00 ; and hence the plaintiff was clearly entitled to recover the full amount of his insurance."

It is obvious that the property was fairly included in the descrip-

tion, besides the question was not passed upon as the above quotation sufficiently shows.

The verdict in the present case was not only for the value of the machinery, but also of the patterns, and to that extent was excessive.

Without considering the other questions in the case, it follows that the judgment and order should be reversed and a new trial granted.

Judgment and order appealed from affirmed.